UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

SHELLY M. NOKES,                         )
                                         )
                Plaintiff,               )
                                         )
        vs.                              )        No. 2:11-CV-07 (CEJ)
                                         )
MICHAEL J. ASTRUE,                       )
Commissioner of Social Security,         )
                                         )
                Defendant.               )

## MEMORANDUM AND ORDER

This matter is before the Court for review of an adverse ruling by the Social Security Administration.

### I. Procedural History

On April 19, 2007, plaintiff filed an application for supplemental security income disability benefits under Title XVI of the Act, 42 U.S.C. §§ 1391 et seq. (Tr. 99). Plaintiff claims that she is disabled as a result of lower-back problems and associated neurological symptoms.  Plaintiff originally alleged a disability onset date of May 27, 2005, but has since amended her onset date to April 27, 2007. (Tr. 12, 26). Plaintiff's application was initially denied on July 13, 2007. (Tr. 49).  She subsequently requested reconsideration and a hearing before an Administrative Law Judge ("ALJ").  (Tr. 83).

A hearing was held on September 23, 2009 at which the ALJ heard testimony from plaintiff and vocational expert John McGowan.  (Tr. 24-44).  Plaintiff was represented by counsel at the hearing.  Id.  On November 24, 2009, the ALJ issued a written decision denying plaintiff benefits.  (Tr. 9-20).  Plaintiff appealed the ALJ's decision on December 21, 2009 and submitted additional evidence for the Appeals Council's consideration on April 13, 2010.  (Tr. 8, 280).  The Appeals Council affirmed

the ALJ's decision denying benefits on November 23, 2010 and found the additional evidence submitted by plaintiff not relevant as pertaining to the period after the ALJ's decision. (Tr. 1-4). Accordingly, the ALJ's decision stands as the Commissioner's final decision. See 42 U.S.C. § 405(g).

## II. Evidence Before the ALJ

### A. Background and Employment History

Plaintiff was born on September 7, 1971 and was 38-years old at the time of the hearing. (Tr. 18). Plaintiff testified that she has her GED and has completed a one-year educational training program--but is not licensed--to work as an electrician. (Tr. 26). Plaintiff was single at the time of the hearing and lives with her two daughters in Palmyra, MO. (Tr. 39, 100).

Plaintiff has previously worked as a die casting machine operator, nurse's aid, cashier and restaurant worker. (Tr. 41, 132). Plaintiff's wage history indicates that she earned $9,697.13, $6,973.30, $6,845.00 in the years 2004, 2005, and 2006, respectively, but she has not earned income since 2006. (Tr. 113).

### B. Medical History

The relevant medical record begins following an work-related back injury plaintiff suffered on May 27, 2005. (Tr. 170). It appears that plaintiff visited the emergency room on the date of the injury, on June 2, 2005, and on June 10, 2005 . However, the only records submitted from these visits is a one-page form from the June 10th visit. (Tr. 167). On June 10th, plaintiff was given morphine for back pain, a prescription for Ativan[1] and was scheduled for a follow-up appointment.

---

[1]Ativan is a brand name for Lorazepam and is prescribed to treat anxiety. http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a682053.html (last visited

On October 18, 2005, plaintiff, in connection a worker's compensation claim she filed for the May 27, 2005 injury, underwent an independent medical evaluation by David Lange, M.D.  (Tr. 168-72).  Dr. Lange's report indicates that plaintiff had an MRI on June 2, 2005.  Dr. Lange opined that the MRI images revealed degenerative disc changes in plaintiff's lower back, specifically at the L4-5 and L5-S1 levels.  Dr. Lange notes that plaintiff was seen initially by a Dr. Holt, who recommended that plaintiff undergo physical therapy. Dr. Lange concluded that plaintiff had a herniation at L5-S1 that was causing her numbness and pain in her left leg.  Dr. Lange further opined that plaintiff could engage in light duty work with a lifting restriction of 30-40 pounds on occasion, but more frequently with lesser amounts, and a restriction in repetitive bending.

Plaintiff was seen again on November 9, 2006 by Craig Kuhns, M.D.  (Tr. 178).  Dr. Kuhn's report indicates that plaintiff had been experiencing back pain and numbness in her left leg since injuring her back on May 27, 2005.  Dr. Lange notes that plaintiff had undergone multiple conservative-treatment regiments including physical therapy, massage, ultrasound, anti-inflammatory and narcotic medication and epidural steroid injections.  Dr. Lange recommended that plaintiff undergo a left-sided microdiskectomy[2] at the L5-S1 level to treat her recurring symptoms.  The microdiskectomy performed by Dr. Kuhns on December 15, 2006.  (Tr. 180).

 Plaintiff was again seen by Dr. Kuhns for a six-week, post-operative assessment on January 25, 2007.  (Tr. 215).  Dr. Kuhn's report indicates that plaintiff had some

on Aug. 29, 2007).

[2]Surgical procedure to remove a portion of an intervertebral disk.

improvement, but she continued to experience pain in her back and persistent numbness in her left leg. Dr. Kuhn recommended that plaintiff continue her attempts to quit smoking, engage in cardiovascular exercise, and avoid any lifting or bending that would be hard on her back.

Dr. Kuhn's next report was generated following his examination of plaintiff on August 30, 2007. (Tr. 217). Dr. Kuhn notes that plaintiff continued to experience pain with some improvement following her December 15, 2006 diskectomy, but that she re-injured her back about a month earlier. Dr. Kuhn described plaintiff as alert and in no apparent distress. Dr. Kuhn diagnosed plaintiff with degenerative disk disease at the L4-5 and L5-S1 levels with herniation at the left side of L5-S1. He recommended that plaintiff undergo additional physical therapy and noted that plaintiff was able to do sedentary work but would be unable to lift 10 pounds consistently without provoking pain.

On July 12, 2007, plaintiff was examined by an independent medical consultant in connection with this application for benefits. (Tr. 196). The residual functional capacity report generated from this examination indicated that plaintiff was exertionally limited to: lifting up to 20 pounds on occasion; lifting up to 10 pounds frequently; standing or walking at least 2 hours of each 8-hour workday; sitting for a total of 6 hours in an 8-hour workday; and only occasionally bending, stooping, or kneeling.

Plaintiff was seen by Joel Jeffries, M.D., on September 21, 2007. (Tr. 220). Dr. Jeffries noted that plaintiff was unable to attend physical therapy due to transportation issues. Dr. Jeffries recommended that plaintiff undergo an MRI with contrast to further determine if she had recurring disk herniation, but that she could work subject to a 20-pound weight-lifting limitation.

Plaintiff was again seen by Dr. Jeffries on October 19, 2007. (Tr. 223). Dr. Jeffries notes that plaintiff declined to receive a gadolinium[3] injection prior to the MRI scan. The MRI was diagnostic and showed persistent or recurrent disk herniation at the L5-S1 level. Dr. Jeffries recommended that plaintiff receive an epidural steroid injection, participate in physical therapy and noted that she was not a good candidate for further surgery at that time. Plaintiff's 20-pound lifting limitation remained unchanged.

On January 8, 2008, plaintiff was examined by Dr. Jeffries for continued pain in her lower-back and left leg. Dr. Jeffries indicated that plaintiff was yet not able to receive an epidural injection or participate in physical therapy due to familial issues. Dr. Jeffries again recommended that plaintiff receive an epidural steroid injection, prescribed her Darvocet[4] for pain, and opined that plaintiff was able to work with a 20-pound lifting restriction.

Dr. Jeffries examined plaintiff again on March 26, 2008. (Tr. 227). At plaintiff's request, Dr. Jeffries determined plaintiff to have a permanent partial impairment rating of 6% as a result of her persisting back injury. Dr. Jeffries noted that plaintiff is continuing a home-exercise program, was on a waiting list to begin physical therapy and was still attempting to schedule an epidural steroid injection. Dr. Jeffries opined that plaintiff's prior working restrictions remained unchanged.

---

[3] A paramagnetic metal ion solution injected into a patient to provide greater contrast in MRI procedures. http://www.fda.gov/Drugs/DrugSafety/ DrugSafetyNewsletter/ucm142889.htm (last visited December 13, 2011).

[4] Darvocet is a centrally acting narcotic analgesic agent indicated for relief from mild to moderate pain. It can produce dependence. See Phys. Desk Ref. 3497 (60th ed. 2006).

Plaintiff has also submitted reports generated by her primary physician David Knorr, D.O. (Tr. 269). Dr. Knorr examined plaintiff on March 6, 2008 and reported that plaintiff continued to experience back and left leg pain. Dr. Knorr assessed plaintiff as experiencing arthritis of the lower back and disc herniation with some radicular[5] symptoms. Plaintiff was prescribed Lyrica,[6] Naproxen,[7] and Vicodin.[8]

Dr. Knorr again examined plaintiff on January 16, 2009. (Tr. 270). He noted that plaintiff had recurrent disk herniation and continued to experience back pain, numbness and weakness of her left leg. Dr. Knorr recommended that plaintiff continue to attempt to get a epidural steroid injection, if possible through her Medicaid coverage, and that she have a further consultation with an orthopedic specialist. Plaintiff was "put back on" Lyrica and prescribed Advair[9] and Celebrex.[10] These

_____

[5] Neurological symptoms stemming from disorder of the spinal nerve roots. See Stedman's Med. Dict. 1503 (27th ed. 2000).

[6] Lyrica, or Pregabalin, is an anticonvulsant indicated for the treatment of neuropathic pain and postherpetic neuralgia and for the management of fibromyalgia. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a605045.html (last visited on Mar. 9, 2011).

[7] Naproxen is the generic name for Naprosyn, a nonsteroidal anti-inflammatory drug used for relief of the signs and symptoms of tendonitis and pain management. See Phys. Desk Ref. 2769-70 (60th ed. 2006).

[8] Vicodin is a narcotic analgesic indicated for relief of moderate to moderately severe pain. Dependence or tolerance may occur. See Phys. Desk. Ref. 530-31 (60th ed. 2006).

[9]Advair is indicated for maintenance treatment of asthma and airflow obstruction in patients with COPD. See Phys. Desk Ref. 1275 (64th ed. 2010).

[10] Celebrex is the brand name for Celecoxib and is used to relieve pain, tenderness, swelling and stiffness caused by osteoarthritis (arthritis caused by a breakdown of the lining of the joints), rheumatoid arthritis (arthritis caused by swelling of the lining of the joints), and ankylosing spondylitis (arthritis that mainly affects the spine). Celecoxib is also used to treat painful menstrual periods and pain from other causes. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a699022.html (last

medications were provided in the form of free samples as plaintiff could not afford other options at that time.

Alan Nichols, M.D. reviewed three images of plaintiff's lower back taken on January 27, 2009 and found plaintiff to have moderate disk degeneration at the L4-5 level with preservation of vertebral body height and no spondylolisthesis.[11]  (Tr. 273). Dr. Nichols also reviewed three images of plaintiff's upper back but did not give a diagnosis based on these images.  (Tr. 274).  Dr. Nichols found "nothing acute" in his review of plaintiff's back x-rays.

On April 13, 2010, more than four months after the ALJ's decision denying benefits, plaintiff submitted a letter written by Dr. Knorr on April 5, 2010.  (Tr. 281). Dr. Knorr's letter states that "Shelly M. Nokes is unable to work full-time due to disabling back pain."  Dr. Knorr's letter notes plaintiff's history of degenerative disc disease and recurring disk herniation at L5-S1.  Dr. Knorr also wrote that plaintiff had undergone epidural steroid injections in the past and that they had not helped significantly.

### C.    The September 23, 2009 Hearing

At plaintiff's request, a hearing was held on September 23, 2009 before an ALJ for further consideration of plaintiff's application for disability benefits.  (Tr. 24). Plaintiff, represented by counsel, testified in response to questions from the ALJ and her attorney.  (Tr. 26-44).  She stated, in relevant part, that: she had not worked since April of 2007; she could only sit for 15-20 minutes at a time; she experiences

---

visited December 13, 2011).

[11]Degeneration or deficient development of a portion of the vertebra.  Merck Manual 329 (18th ed. 2006).

constant neck and back pain; she has numbness, loss of feeling and occasional pain in her left leg; she experiences migraine headaches 2-3 times per week; she can only stand for 30 minutes at a time; cannot lift more than 20 pounds; can walk for an hour at a time; her pain increases with activity and interferes with her concentration; she must lay down 2-3 times per day for 5-10 minutes at a time if she does a lot of housework; and is able to drive, do housework, cook, shop, and care for her two school-age daughters by herself.

The ALJ also heard testimony from John McGowan, a vocational expert.  (Tr. 39). After summarizing plaintiff's work history, McGowan noted that plaintiff had worked previously as a cashier and that this was the only prior position that could be characterized at the "light" exertional level.  In a hypothetical question, the ALJ asked what work is available for a 38-year-old individual with plaintiff's education and work history that could perform light duty work with only occasional stooping, kneeling, and crouching.  In response, McGowan opined that such an individual could return to plaintiff's previous cashier job.  He further opined that there were other available jobs that the individual could perform such as small-parts assembly, small product inspector, hand packager and general office worker.

In a second hypothetical question, the ALJ inquired whether there are any jobs available for an individual who has plaintiff's education and work history, but experiences chronic and severe back pain, frequent migraine headaches, is unable to be present at a work station for eight hours per day or must reline 2-3 hours a day, and would experience a 20 percent reduction in concentration due to pain and migraines.  In response, McGowan testified that no jobs befitting someone with those limitations exist.

-8-

## IV.  The ALJ's Decision

In the decision issued on November 24, 2009, the ALJ made the following

relevant findings:

1.  Plaintiff has not engaged in substantial gainful activity since April 19, 2007.

2.  Plaintiff has the following severe impairments: status post lumbar L5-S1 diskectomy; degenerative disc disease; and migraine headaches (20 C.F.R. 416.920(c)).

3.  Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4.  After careful consideration of the entire record, plaintiff has the residual functioning capacity to perform light work as defined in 20 C.F.R. 416.967(b) except the claimant is only occasionally able to stoop to bend forward at the waist; crouch to bend downward by bending the legs and spine; and, kneel to bend at the knees to come to rest upon the knees.

5.  Plaintiff is capable of performing past relevant work as a cashier II.  This This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

6.  Additionally, considering plaintiff's age, education, work experience, and residual functioning capacity, there are jobs that exist in significant numbers in the national economy that plaintiff can perform.

7.  Plaintiff has not been under a disability, as defined in the Social Security Act, since April 19, 2007.

(Tr. 12-20).

The Appeals Council, in affirming the ALJ's decision, considered the April 5, 2010

letter written by Dr. Knorr.  (Tr. 2). The Appeals Council found the letter to pertain to

a time outside of the period relevant to the ALJ's decision.  Alternately, the Appeals

Council found the letter be inconsistent with the other medical evidence in the record.

Consequently, the Appeals Council decision found no basis to overturn the ALJ's denial

of benefits and noted that plaintiff would have to file a new application for benefits in order to have Dr. Knorr's post-decisional findings considered.

## V. Discussion

To be eligible for disability insurance benefits, plaintiff must prove that she is disabled. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382 (a)(3)(A) (2000). An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner employs a five-step evaluation process, "under which the ALJ must make specific findings." Nimick v. Secretary of Health and Human Serv. 887 F.2d 864 (8th Cir. 1989). The ALJ first determines whether the claimant is engaged in substantial gainful activity. If the claimant is so engaged, she is not disabled. Second, the ALJ determines whether the claimant has a "severe impairment," meaning one which significantly limits her ability to do basic work activities. If the claimant's impairment is not severe, she is not disabled. Third, the ALJ determines whether the claimant's impairment meets or is equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant's impairment is, or equals, one of the listed impairments, she is

-10-

disabled under the Act.  Fourth, the ALJ determines whether the claimant can perform

any past relevant work.  If the claimant can, she is not disabled.  Fifth, if the claimant

cannot perform her past relevant work, the ALJ determines whether she is capable of

performing any other work in the national economy.  If the claimant is not, she is

disabled.  See 20 C.F.R. §§ 404.1520, 416.920 (2002); Bowen v. Yuckert, 482 U.S.

137, 140-42 (1987).

### A.     Standard of Review

The Court must affirm the Commissioner's decision, "if the decision is not based

on legal error and if there is substantial evidence in the record as a whole to support

the conclusion that the claimant was not disabled."  Long v. Chater, 108 F.3d 185, 187

(8th Cir. 1997).  "Substantial evidence is less than a preponderance, but enough so

that a reasonable mind might find it adequate to support the conclusion."  Estes v.

Barnhart, 275 F.3d 722, 724 (8th Cir. 2002) (quoting Johnson v. Apfel, 240 F.3d 1145,

1147 (8th Cir. 2001)).  The Court may not reverse merely because the evidence could

support a contrary outcome.  Estes, 275 F.3d at 724.

In determining whether the Commissioner's decision is supported by substantial

evidence, the Court reviews the entire administrative record, considering:

    1.     The ALJ's credibility findings;

    2.     the plaintiff's vocational factors;

    3.     the medical evidence;

    4.     the plaintiff's subjective complaints relating to both exertional and
            nonexertional impairments;

    5.     third-party corroboration of the plaintiff's impairments; and

    6.     when required, vocational expert testimony based on proper hypothetical
            questions, setting forth the claimant's impairment.

See Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992).

The Court must consider any evidence that detracts from the Commissioner's decision. Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999). Where the Commissioner's findings represent one of two inconsistent conclusions that may reasonably be drawn from the evidence, however, those findings are supported by substantial evidence. Pearsall, 274 F.3d at 1217 (citing Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)).

### B.   Analysis

Plaintiff asserts that the following errors warrant remand or reversal: (1) the Appeals Council erred by failing to remand the case after receiving new material evidence, i.e., Dr. Knorr's April 5, 2010 letter; (2) the Appeals Council failed to give substantial weight to Dr. Knorr opinion as a treating physician; and (3) the ALJ failed to afford proper weight to the opinion of plaintiff's treating physician(s) and her decision is not supported by substantial evidence.

### 1.   The Appeals Council's Decision

The first two allegations of error pertain to the Appeals Council's consideration of Dr. Knorr's April 5, 2010 letter. Dr. Knorr's letter was written and submitted more than four months after the ALJ's November 24, 2009 decision. Also, the letter did not describe any additional diagnoses or change in plaintiff's condition and it failed to indicate the onset of the disabling pain described by Dr. Knorr. In light of its timing and content, Dr. Knorr's letter was not relevant to the plaintiff's application because it did not pertain to the period beginning with plaintiff's alleged onset date and ending with the ALJ's written decision. See 20 C.F.R. 416.330 (setting for the relevant

-12-

period). As such, the Appeals Council did not err in its assessment of Dr. Knorr's letter or by failing to remand plaintiff's case for further consideration by the ALJ. See Hillier v. Social Sec. Admin., 486 F.3d 359 (8th Cir. 2007) (describing "relevant material" under 20 C.F.R. 416.330 and 416.335).

The Appeals Council was also not obligated to re-contact Dr. Knorr for further information. The Secretary is under no duty to go to inordinate lengths to develop a claimant's case, but must "make an investigation that is not wholly inadequate under the circumstances." Battles v. Shalala, 36 F.3d 43, 45 (8th Cir.1994). There is no bright-line test for determining when the Secretary has failed to adequately develop the record; the determination must be made on a case by case basis. Battles, 36 F.3d at 45. Here, the record contained numerous reports from treating physicians pertaining to the relevant period. These reports contained detailed descriptions of plaintiff's work-related limitations. As such, the Appeals Council did not err by failing to elicit more information based upon Dr. Knorr's April 5th letter.

The Court further finds that the Appeals Council acted within its discretion in affording little or no weight to the content of Dr. Knorr's letter as inconsistent with the medical record and containing a conclusory, unsubstantiated opinion. See Wildman v. Astrue, 596 F.3d 959 (8th Cir. 2010) (opinion of treating physician may be afforded little or no weight when it is inconsistent with other substantial evidence in the record, consists of nothing more than vague, conclusory statements, and fails to take into consideration the claimant's noncompliance or choice of conservative treatment). If plaintiff believes that her condition has deteriorated after the date of the ALJ's decision, and that she now meets the requirements of disability as set out in the Social

-13-

Security Act, then she may file a new application. 20 C.F.R. 416.330; See Riley v.
Shalala, 18 F.3d 619, 623 (8th Cir.1994).

### 2. The ALJ's Decision

As to plaintiff's remaining allegation of error, the Court finds the Commissioner's
findings to be supported by substantial evidence. The ALJ determined that plaintiff
possessed the residual functional capacity to perform a wide range of light duty work
as defined in 20 C.F.R. 416.967(b), subject to postural limitations in that she could
only occasionally stoop, bend and kneel. In the relevant period leading up to the ALJ's
decision, plaintiff's medical records consistently indicate that plaintiff was able to work
subject to a 20-pound lifting limitation. This explicit description of plaintiff's work-
related limitations was made by Dr. Jeffries, a specialist and treating physician. Owen
v. Astrue, 551 F.3d 792 (8th Cir. 2008) (treating physicians generally entitled to
controlling weight). It is also consistent with the definition of light work as "lifting no
more than 20 pounds at a time with frequent lifting or carrying of objects weighing up
to 10 pounds." 20 C.F.R. 416.967(b). The more recent reports by Dr. Knorr and Dr.
Nichols from January of 2009 indicate that plaintiff continued to experience
neurological symptoms, but did not describe any additional limitations, prescribe
narcotic pain medication, and found "nothing acute" in plaintiff's spinal x-rays. Thus,
the January 2009 reports, even though more recent than Dr. Jeffries' March 26, 2008
report, are not inconsistent with the limitations described by Dr. Jeffries and adopted
by the ALJ.

The only other evidence in the record that indicated greater impairment was
plaintiff's own subjective descriptions of her limitations as a result of pain and migraine
headaches, which the ALJ explicitly discredited in the November 24, 2009 decision.

-14-

Before determining the claimant's residual functional capacity, the ALJ must evaluate the credibility of the claimant's subjective complaints. Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir.2007). Where "an ALJ explicitly discredits a claimant's testimony and gives good reason for doing so, [the Court] will normally defer to that judgment." Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001). The "crucial question" is not whether the claimant experiences symptoms, but whether her credible subjective complaints prevent her from working. Gregg v. Barnhart, 354 F.3d 710, 713–14 (8th Cir.2003). The Eighth Circuit has provided a set of factors that should be considered in evaluating the extent of pain-based impairment. See Polaski v. Heckler, 739 F.2d 1320, 1321–22 (8th Cir.1984) (setting forth factors).[12] The ALJ is not required to discuss all of the Polaski factors as long as "he acknowledges and considers the factors before discounting a claimant's subjective complaints." Moore v. Astrue, 572 F.3d 520, 524 (8th Cir.2009).

In discrediting plaintiff's self-described limitations, the ALJ summarized the record and found that plaintiff's testimony regarding the frequency, duration and intensity of plaintiff's neurological symptoms to be inconsistent with the explicit opinions of her treating physicians, her course of treatment, and the extent of her daily activities. This analysis correctly considered the Polaski factors implicated by the evidence in the record. Id. Thus, the ALJ's determination that plaintiff possessed the RFC to perform a wide range of light and sedentary work subject to lifting and postural

---

[12]"In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints." Finch v. Astrue, 547 F.3d 933, 935 (8th Cir.2008)

limitations, was supported by substantial evidence. Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007) (A claimant's RFC is a medical question and must be supported by at least some medical evidence).

In the final step of the disability analysis, the ALJ correctly relied upon the testimony of a vocational expert in determining that plaintiff could return to her past work as a cashier or perform other available gainful activity. "Testimony from a vocational expert is substantial evidence only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." Id. at 620. The first hypothetical described by the ALJ limited the individual to light work with postural limitations that accurately reflected plaintiff's RFC. The vocational expert testified that such an individual could return to her past work as a cashier or engage in other available, gainful activity.

## VI. Conclusion

For the reasons discussed above, the Court finds that the Commissioner's decision is supported by substantial evidence in the record as a whole. Therefore, plaintiff is not entitled to relief.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by plaintiff in her brief in support of complaint [Doc. #21] is **denied**.

A judgment in accordance with this order will be entered separately.

CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 20th day of January, 2012.

-16-